IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERRI NATALE,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| v. | : | No. 17-886 |
| **PHOENIXVILLE HOSPITAL COMPANY, LLC (d/b/a PHOENIXVILLE HOSPITAL),** | : | |
| *Defendant*. | : | |

# ORDER

**AND NOW,** this 22nd day of August, 2018, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17), Plaintiff's Response (Doc. No. 20), Defendant's Reply (Doc. No. 22), and Plaintiff's Surreply (Doc. No. 25), I find as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff Sherri Natale has sued Defendant Phoenixville Hospital Company, LLC for failing to accommodate her disability and for retaliating against her for taking medical leave and requesting other accommodations. Plaintiff asserts claims for failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 et seq., and claims for retaliation under the ADA, PHRA, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (Compl. ¶¶ 1-2.)

2. Defendant has moved for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56(a). For the reasons described below, Defendant's Motion will be granted in part and denied in part.

3. The evidence adduced thus far, when viewed in the light most favorable to Plaintiff as the non-moving party, reflects the following:

   - From April 2011 to June 2016, Plaintiff worked in Defendant's medical office building as a Billing Coordinator. Her direct supervisor was Patricia Gunther, and her office manager was Maureen Emberger. Plaintiff's primary responsibility was to convert physicians' office and surgical notes into insurance billing codes, a task known as "coding." Her other responsibilities included answering physicians' questions, pursuing insurance appeals, monitoring accounts-receivable, and updating office procedures. Altogether, these tasks kept Plaintiff fully occupied for eight hours per day. (Pl.'s SOF ¶¶ 1, 4-5; Def.'s SOF ¶¶ 6, 9-10.)

   - In May 2015, Plaintiff began experiencing back, leg, and hip pain. Although at times the pain was "so bad [she] could barely walk," it did not prevent her from working, and she would manage the pain using ice packs, heating pads, and leg rests. (Pl.'s SOF ¶ 6; id., Ex. C, at 68:4-70:8.)

   - In November 2015, Plaintiff's orthopedist, Dr. Alan Hilibrand, recommended that Plaintiff undergo back surgery. Dr. Hilibrand estimated that the surgery would leave Plaintiff unable to work for at least twelve weeks. Plaintiff scheduled the surgery for January 2016, then contacted Defendant's Human Resources department to arrange for medical leave. Defendant scheduled Plaintiff to receive twelve weeks of FMLA leave from the date of her surgery until April 4, 2016. Plaintiff underwent surgery as planned. (Pl.'s SOF ¶¶ 10-16.)

   - Plaintiff's recovery was worse than Dr. Hilibrand had anticipated. He "nicked [Plaintiff's] dura," causing her to leak spinal fluid and suffer debilitating spinal headaches. Plaintiff would have to lie motionless for as long as forty-eight hours at a time. She also developed neck pain, which required her to lie down for periods of an hour at a time. These ailments rendered Plaintiff incapable of sitting in a chair for extended periods. (Pl.'s SOF ¶ 18; id., Ex. C, at 90:1-92:17, 95:8-97:12.)

   - As the April 4, 2016, end date of her FMLA leave drew near, Plaintiff realized that she would be unable to return to work. She contacted Human Resources, and an employee named Melanie Langhorne told Plaintiff that she could extend her time off with thirty days of unpaid leave, which Plaintiff accepted. During her unpaid leave, Plaintiff saw Dr. Hilibrand on April 15, 2016, and he wrote that

Plaintiff was "close" to returning to work, but that she would need to stand up for five minutes every hour to mitigate the pain. He instructed Plaintiff to call his office when she felt ready to return, and he would write her a work authorization. Subjectively, however, Plaintiff felt that she was in no shape to sit for eight hours per day. Accordingly, with the May deadline approaching, Plaintiff requested, and Defendant accepted, a second thirty-day period of unpaid leave, to run through June 5, 2016. (Pl.'s SOF ¶¶ 19-24; id., Ex. N.)

- Although Plaintiff's back did not improve during the month of May, Plaintiff decided, for personal and financial reasons, that she would try to return to work. She called Dr. Hilibrand's office to request a release for part-time work only, with which he complied. Plaintiff rated her confidence in her ability to do the work as "at least a six" out of ten, partly due to her success with managing pain during the previous year. However, Plaintiff conceded that she was not certain of her ability, and she knew that eight hours would have been out of the question. (Def.'s SOF ¶¶ 45, 47, 48; Pl.'s SOF, Ex. C, at 124:5-126:6.)

- On May 18, 2016, Plaintiff called Ms. Gunther and Ms. Emberger and told them that she would return on June 1 to work part time. The two supervisors reacted positively to the news. A few days later, however, Plaintiff received a call from Ms. Langhorne in Human Resources, advising Plaintiff that part-time work was forbidden under company policy. Ms. Langhorne instructed Plaintiff that she must return for full-time work on June 6, or not at all. (Pl.'s SOF ¶¶ 29-32; id., Ex. C, at 133:17-134:23.)

- Despite Ms. Langhorne's instruction, Plaintiff showed up for work on June 1, 2016, seeking to work part time. Ms. Gunther was pleased, but Ms. Emberger was concerned that Plaintiff was violating company policy and told Plaintiff to call Human Resources. Plaintiff called Ms. Langhorne, who reiterated that part-time work was prohibited and that Plaintiff must leave until she was authorized to work full time. (Pl.'s SOF ¶¶ 33-34, 36-37.)

- Ms. Langhorne offered to extend Plaintiff's unpaid leave until July 1, 2016. Plaintiff told Ms. Langhorne that she could not work on July 1 because she had a doctor's appointment that day. Ms. Langhorne pressed Plaintiff for a date when she could return full time, but Plaintiff was unable to provide one. Ms. Langhorne then told Plaintiff that she would have to either show up for work full time on June 6, or be terminated. On June 3, Plaintiff left Ms. Langhorne a voicemail stating that she would not return to work on June 6, and, on June 6, Plaintiff was terminated. (Pl.'s SOF ¶¶ 37-43; id., Ex. C, at 149:24-152:2.)

- Plaintiff's back did not improve during the month of June, and Plaintiff had further surgery in August 2016. Plaintiff described her recovery from the second surgery as faster, and believes that she would have been able to work part time

      during those months. Plaintiff did not apply for other full-time work until January 2017. (Def.'s SOF ¶ 77; Pl.'s SOF, Ex. C, at 139:22-142:21.)

- While Plaintiff was away, Defendant handled coding tasks by having Ms. Gunther perform some of the work and sending other work to Defendant's "corporate" office. According to Plaintiff, Ms. Gunther reported that this arrangement worked "pretty well." Defendant did not fill Plaintiff's vacant position until March 2017. (Pl.'s SOF ¶ 44; id., Ex. C, at 123:2-23; id., Ex. D, at 35:11-14.)

4. Defendant has moved for summary judgment on all claims. For the reasons that follow, I conclude that Plaintiff has pointed to sufficient evidence for a jury to find in her favor on her claims for failure to accommodate, and thus Defendant's Motion as to those claims will be denied. However, I find that Plaintiff has not identified sufficient evidence to support her retaliation claims, and thus I will grant Defendant's Motion on those claims.

**LEGAL STANDARD**

5. Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could return a verdict for the non-moving party, and a dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

6. The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

**ANALYSIS**

Claims for Failure to Accommodate

7. Under the ADA, an employer may not discriminate against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). Such discrimination includes failing to make reasonable accommodations to the "known physical or mental limitations of an otherwise qualified individual." § 12112(b)(5)(A). In order to make out a claim for failure to accommodate, a plaintiff must establish that: (1) she was a qualified individual, (2) she had a disability, (3) she informed her employer that she needed an accommodation, (4) the employer reasonably could have accommodated her disability, and (5) the employer

did not act in good faith to do so. Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017).[1]

8. The parties do not dispute that Plaintiff had a disability or that she informed Defendant that she needed an accommodation. The parties disagree as to whether Plaintiff was a qualified individual and whether Defendant acted in bad faith by refusing to accommodate Plaintiff's disability.

*Whether Plaintiff Was a Qualified Individual*

9. An employee is a qualified individual if she can perform the essential functions of her job, with or without a reasonable accommodation. 42 U.S.C. § 12111(8). The parties do not dispute that Plaintiff had the requisite skills and training to work as a Billing Coordinator, and they likewise agree that Plaintiff was incapable of working without an accommodation. The parties disagree only as to whether Defendant could have offered an accommodation that would have enabled Plaintiff to perform the essential functions of her job.

10. Plaintiff posits that Defendant could have accommodated her disability in either of two ways: (1) by offering additional leave until July 5, 2016, or (2) by allowing her to work part time until her back recovered. Defendant counters that either accommodation would have fallen short of enabling Plaintiff to perform the essential functions of her job. Additionally, Defendant contends that the proposed accommodations would have been unreasonable and therefore outside the scope of the ADA.

---

[1] The parties agree that Plaintiff's failure to accommodate claim under the PHRA follows the same analytical framework. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

11. Plaintiff's first suggested accommodation, a leave of absence, would have been a reasonable accommodation if it would have enabled Plaintiff to return to work within a reasonable time. Fogleman v. Greater Hazleton Health All., 122 F. App'x 581, 586 (3d Cir. 2004). Although leave itself is not a way to perform the job, leave may accommodate an employee's disability by allowing her to recover and thus perform her job in the near future. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004).

12. When Plaintiff and Ms. Langhorne discussed the possibility of extending Plaintiff's unpaid leave for an additional month—until some date in early July—Plaintiff had a doctor's appointment scheduled for July 1, at which time she was to be reevaluated for possible full-time work. (Pl.'s SOF ¶ 39.) As it turned out, Plaintiff's back did not improve during the month of June, and her July 1 evaluation showed instead a need for further surgery. (Def.'s SOF ¶ 77.) Plaintiff concedes that, as a result, she would not have been ready for full-time employment until well after July. (Pl.'s SOF, Ex. C, at 139:12-143:3.) Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could not find that an additional month of unpaid leave would have enabled Plaintiff to perform the essential functions of her job, and therefore Plaintiff cannot make out a failure to accommodate claim by relying on that proposed accommodation alone.

13. However, as noted above, Plaintiff further contends that she could have worked part time until her back recovered. Defendant disagrees, arguing, first, that Plaintiff was not physically capable of working part time; second, that, even if she was, she could not have completed the essential functions of her job working only part-time hours; and, finally, that such an accommodation would have been unreasonable.

14. As to physical capability, Plaintiff offers that her doctor authorized her to work part time, that she had managed her pain for nearly a year before surgery, and that she had developed ways to mitigate the pain. (Pl.'s SOF ¶ 27, id., Ex. C, at 124:5-126:6.) Additionally, Plaintiff rated her subjective confidence as "at least a six" that she could perform the work. (Id., Ex. C, at 125:16-126:2.) Plaintiff does concede that her back had not improved significantly from April to June 2016 and that she herself had doubts about her ability. (Id., Ex. C, at 116:19-22, 126:3-6, 144:20-23.) Taken as a whole, however, the evidence is enough to raise a genuine dispute of fact as to whether Plaintiff could have managed the task.

15. Next, Plaintiff must show that part-time work would have enabled her to perform the essential functions of the Billing Coordinator job. 42 U.S.C. § 12111(8). Defendant argues that Plaintiff could not have completed the coding function during part-time hours because the office had only two qualified coders and Plaintiff herself conceded that the work was enough to occupy her for eight hours a day. (Def.'s SOF ¶ 6; Pl.'s SOF, Ex. C, at 50:19-22.) In response, Plaintiff offers that, while she was away from work following her surgery, Ms. Gunther had divided the coding tasks between herself and "corporate," that the arrangement worked "pretty well," that Ms. Gunther and Ms. Emberger reacted positively to Plaintiff returning part-time, and that Plaintiff's job was not filled until March 2017. (Pl.'s SOF ¶ 44; id., Ex. C, at 123:2-23; id., Ex. D, at 35:11-14.) The last of these details is the most important: the Billing Coordinator job remained empty during Plaintiff's entire recovery, plus an additional two months. A jury might find that Defendant could have committed more employee-hours to coding by retaining Plaintiff

part time than by firing her. This evidence is enough to raise a genuine dispute of fact as to whether Plaintiff could have performed the essential functions of her job while working part time.

16. Finally, Plaintiff must show that part-time work was "reasonable." 42 U.S.C. § 12111(8). The ADA expressly contemplates that, as a general matter, part-time work is the type of modification that may constitute a reasonable accommodation. See 42 U.S.C. § 12111(9)(B) (defining "reasonable accommodation" to include "part-time or modified work schedules"). The same evidence that Plaintiff offers to show that she could have performed the job's essential functions while working part time raises a dispute of fact as to whether such an arrangement would have been reasonable.

17. Plaintiff, therefore, has shown that a reasonable jury could find that she is a qualified individual within the meaning of the ADA.

*Whether Defendant Acted in Bad Faith*

18. To succeed on her failure-to-accommodate claims, Plaintiff must also show that Defendant did not act in good faith to accommodate her disability. Capps, 847 F.3d at 157. Defendant argues that it fulfilled any such obligation and that any blame for failing to reach a reasonable accommodation rests with Plaintiff. Plaintiff, however, contends that Defendant refused the very accommodation that would have enabled her to perform her job, namely, part-time work.

19. When an employee requests an accommodation, the employer should initiate an "interactive process" to arrive at a workable solution. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311-12 (3d Cir. 1999). To prevail on a claim for failing to accommodate, a

plaintiff must show that the employer, and not the plaintiff, was responsible for the breakdown in the process. Id. In particular, if an employer offers a reasonable accommodation, the employee cannot then complain that she would have preferred a different one. Diaz v. City of Phila., 565 F. App'x 102, 106 (3d Cir. 2014).

20. Defendant argues that it offered Plaintiff an accommodation of a leave of absence until July 1, 2016, and that Plaintiff turned it down. (Def.'s SOF ¶ 64.) Defendant insists that Plaintiff cannot now complain that she did not receive her preferred accommodation of working part time. Plaintiff responds that a leave of absence until July 1 was no accommodation at all, because she had a doctor's appointment that day and so could not come to work. (Pl.'s SOF ¶ 41.) Plaintiff further contends that by rigidly refusing to consider part-time work, Defendant precluded her from obtaining the one accommodation that would have actually enabled her to perform her job.

21. This evidence is sufficient to raise a genuine dispute of fact as to whether Defendant fulfilled its obligation to attempt in good faith to accommodate Plaintiff's disability. Plaintiff has therefore shown that a reasonable jury could find that she has satisfied all the elements of her claims for failure to accommodate. Accordingly, I will deny Defendant's Motion as to these claims.

Retaliation Claims

22. In order to make out a prima facie case for retaliation under the ADA or the FMLA, a plaintiff must show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two.

Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004).[2] If Plaintiff puts forward evidence sufficient to establish this prima facie case, the burden of production then shifts to the employer to establish a nondiscriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that the proffered reason is pretextual. Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)).

23. The parties agree that Plaintiff engaged in several protected activities: she took FMLA leave from January 2016 to April 2016, she requested unpaid leave from April to June to accommodate her back pain, and she requested part-time work in June 2016 as a further accommodation. (Pl.'s SOF ¶¶ 13, 20, 24, 27.) Likewise, the parties agree that Plaintiff suffered an adverse employment action when Defendant terminated her on June 6, 2016. (Id. ¶ 43.) The parties disagree as to whether Plaintiff can show a causal connection between the two.[3]

24. Plaintiff offers three facts that she claims show a causal connection: (1) that her termination was temporally proximate to her protected activities, (2) that Defendant gave inconsistent reasons for terminating her, and (3) that Defendant's employees took inconsistent positions as to whether part-time work was permissible.

---

[2] The parties agree that the same standard applies to retaliation claims under the PHRA. See Prise v. Alderwoods Grp., Inc., 657 F. Supp. 2d 564, 605 (W.D. Pa. 2009).

[3] The parties also disagree as to whether Plaintiff can show that Defendant's proffered reason for termination was pretextual. Because I find that Plaintiff has not put forward sufficient evidence to establish a causal connection as part of her prima facie case, I need not reach this issue.

25. First, Plaintiff points to the mere five-day span between her last request for part-time work and her subsequent termination. Plaintiff argues that the close sequence of events raises an inference that Defendant terminated her in response to her protected activities.

26. It is true that temporal proximity can show a causal connection. Fasold v. Justice, 409 F.3d 178, 190 (3d Cir. 2005). However, the cases so holding tend to involve an employee engaging in a protected activity followed by a purportedly unrelated adverse action, in which the coincidence between the two raises doubts as to the employer's true motive. See, e.g., Fasold, 409 F.3d at 189-90 (finding sufficient evidence of causal connection where employee filed an administrative claim that his termination was motivated by age and the employer, shortly thereafter, denied the employee's pending internal grievance); Dean v. Specialized Sec. Response, No. 2:09-cv-515, 2011 WL 3734238, at *12 (W.D. Pa. Aug. 24, 2011) (employee complained of not receiving overtime pay and was soon thereafter terminated for a purportedly unrelated reason). By contrast, when an employee comes to her employer conceding that she cannot work and seeking an accommodation, the employer's decision about whether to retain her will necessarily occur at that time, regardless of whether it acts on an improper motive. Under circumstances such as these, therefore, the timing of Plaintiff's termination does not support an inference that Defendant's motive was retaliatory, and thus is not enough to sustain Plaintiff's retaliation claims.

27. Plaintiff next contends that Defendant has shifted its position on why it terminated her, pointing to statements in Defendant's Answer, Responses to Interrogatories, and Brief in Support of Summary Judgment that she believes are contradictory. Specifically, in

Defendant's Answer and Responses to Interrogatories, Defendant denies that Plaintiff requested an extension of leave as a "reasonable accommodation" for her disability, but in its Brief argues that Ms. Langhorne offered such an extension. (Answer ¶ 27; Pl.'s SOF, Ex. S, at 3.) These statements are all consistent with Defendant's view that no accommodation Plaintiff requested would have been reasonable. Moreover, Defendant's explanation for terminating Plaintiff is the same among the three documents—namely, that Plaintiff could not perform her job. This evidence thus fails to raise an inference that Defendant acted with a retaliatory motive.

28. Finally, Plaintiff argues that Defendant engaged in a "pattern of antagonism" by offering and then forbidding part-time employment. See Alderfer v. Nibco Inc., No. 2:98-cv-6654, 1999 WL 956375, at *5 (E.D. Pa. Oct. 19, 1999) ("[A] plaintiff may make out the causal link by producing circumstantial evidence of a pattern of antagonism following the protected activity."). Plaintiff points to statements by Ms. Emberger and Ms. Gunther appearing to endorse part-time work, followed by Ms. Langhorne's outright refusal to allow it. (Pl.'s SOF ¶¶ 25, 30.) While this might show that Ms. Emberger overestimated the flexibility of Defendant's employment policies, it does not show that she intentionally sent mixed messages to harass Plaintiff. This evidence, therefore, also fails to show a retaliatory motive on Defendant's part.

29. Accordingly, I find that Plaintiff has not shown that a genuine dispute of fact exists as to whether Defendant retaliated against her for taking protected actions under the FMLA, ADA, or PHRA, and so I will grant Defendant's Motion as to these claims.

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 17) is **GRANTED IN PART AND DENIED IN PART** as follows:

- Defendant's Motion is **DENIED** as to Counts I and III (Plaintiff's claims for failure to accommodate under the ADA and the PHRA).
- Defendant's Motion is **GRANTED** as to Counts II, IV, and V (Plaintiff's claims for retaliation under the ADA, FMLA, and PHRA), and **JUDGMENT** is entered in favor of Defendant as to these counts.

                      **BY THE COURT:**

                      /s/ Mitchell S. Goldberg
                      _____
                      **MITCHELL S. GOLDBERG, J.**